UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                        :

IN RE STILLWATER CAPITAL
PARTNERS INC. LITIGATION

This document relates to:
11 Civ. 7107

------------------------------------------------------------X

                        :

                        :

                        :

                        :

                        :

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 4/3/12

<u>OPINION AND ORDER</u>

**Master File No. 1:11-2275**
**(SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        This putative class action, which concerns both federal securities claims and state law claims, is part of a larger multi-district litigation. It arises out of plaintiffs' investments in the various Stillwater Funds[1] and Stillwater's[2] merger

---

[1]    The funds are in two groups, the Delaware Funds and the Offshore Funds. Plaintiffs list the Delaware Funds as: a) Stillwater Asset Backed Fund, LP; b) Stillwater Asset Backed Fund II, LP; c) Stillwater Real Estate Fund, LP; d) Stillwater WPB Venture Partners, LP; e) Stillwater WPB Venture Partners II, LP; f) Stillwater Market Neutral Fund, LP; g) Stillwater Market Neutral Fund II, LP; h) Stillwater Matrix Fund, LP; i) Stillwater Loan Opportunities Fund LLC; j) Stillwater Trade Capital, LLC. *See* Amended Complaint ("Am. Compl.") ¶ 58. Plaintiffs list the Offshore Funds as: a) Stillwater Market Neutral Fund III; b) Stillwater Loan Opportunities Fund, SPC; c) Stillwater Asset-Backed Offshore Fund; d) Stillwater Asset-Backed Fund SPV; e) Stillwater Asset-Backed Fund II Onshore SPV; and f) a variety of individual loans including a mezzanine loan to a property in California and a development loan to a property in New York City. *See id.* ¶ 60.

[2]    Defendant Stillwater is comprised of Stillwater Capital Partners, LLC ("SCP, DE"), the general partner of the Delaware Funds, and Stillwater Capital

agreement with Gerova Financial Group, Ltd. ("Gerova").  Plaintiffs' amended complaint alleges, inter alia, violation of Section 14(a) of the 1934 Securities and Exchange Act (Claim I); violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Claim II); violation of Section 20(a) of the Exchange Act (Claim III); various breach of fiduciary duty claims (Claims IV-VI); and aiding and abetting breach of fiduciary duty (Claim VII).  Defendants now move to dismiss all claims.  For the following reasons the motions of SCP, Gerova, and the individual defendants are granted in part and denied in part.

## II.   BACKGROUND[3]

### A.   Plaintiffs

The proposed class consists of all investors in the SCP Funds, those who sought to redeem their investments in the SCP Funds, and those who received restricted, unregistered Gerova shares as part of the SCP/Gerova merger.[4]

_____

Partners, Inc. ("SCP, NY"), the investment manager of the Delaware and Offshore Funds.  *See id.* ¶¶ 58, 60.  I refer to them collectively as "SCP."

[3]     Unless otherwise noted, all facts are drawn from the Amended Complaint and are presumed true for the purposes of this motion.

[4]     *See id.* ¶ 1.  SCP argues that some of the plaintiffs lack standing to bring these claims because they sought redemption of their SCP investments prior to the merger and/or were investors in the Cayman Funds and therefore not entitled to a vote regarding the merger.  *See* Memorandum of Law in Support of the Motion to Dismiss of the Stillwater Defendants ("SCP Mem.") at 6.  However, it is not clear from the Amended Complaint that the named plaintiffs sought redemption of

## B.    Defendants

There are ten named defendants in this action.  Gerova was a "blank check company" formerly known as Asia Special Situation Acquisition Corporation ("ASSAC"), which was formed in March 2007.[5]  As of the date plaintiffs filed their complaint, Gerova was incorporated in Bermuda with its principal offices in Hamilton, Bermuda.[6]  Plaintiffs allege the following claims against Gerova:  (I) violation of Section 14(a) of the Exchange Act; (II) violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (VII) aiding and abetting breaches of fiduciary duty.[7]

SCP, DE is a limited liability company that is the general partner of

---

all of their investments or were solely investors in the Cayman Funds.  These factual issues should be resolved as part of the class certification motion, not at the motion to dismiss stage.  *See Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 324 (S.D.N.Y. 2010) (contention that "plaintiff [was] an inadequate class representative" was inappropriate at motion to dismiss stage); *Andrade v. JP Morgan Chase Bank, N.A.*, No. 08 Civ. 3703, 2009 WL 2899874, at *4 (E.D.N.Y. Sept. 4, 2009) ("[w]hether [p]laintiff can meet her burden with respect to 'commonality,' 'typicality,' and the other requirements of Rule 23 is a question that must await a motion seeking class certification.").

[5]       *See* Am. Compl. ¶ 4.  A blank check company is "a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company, or companies, other entity or person."  17 C.F.R. § 230.419.

[6]       *See* Am. Compl. ¶ 51.

[7]       *See id.* ¶¶ 204, 224, 261.

the Delaware Funds.[8]  SCP, NY is a New York corporation that acts as investment

manager for the Delaware and Offshore Funds.[9]  Plaintiffs allege the following

claims against these defendants:  (I) violation of Section 14(a) of the Exchange

Act; (II) violation of Section 10(b) of the Exchange Act and Rule 10b-5

promulgated thereunder; and (IV-VI) breach of fiduciary duty of care, breach of

fiduciary duty of loyalty, and breach of duty of candor.[10]

Gary Hirst was a founding director of Gerova and was appointed its

president in October 2007; he resigned in February 2011, but is currently serving

as a Gerova director.[11]  Arie Jan van Roon was a founding member of Gerova's

board until February 2011 and allegedly "owns or owned Gerova shares through

Noble Investment Fund Limited."[12]  Michael Hlavsa has served as Chief Financial

Officer ("CFO") of Gerova since Gerova's inception.[13]  Keith Laslop was a Gerova

director from May 2008 until his resignation on February 10, 2011.  He also served

as Gerova's Chief Operating Officer ("COO") from June 2010 until at least

---

[8]      *See id.* ¶ 58.

[9]      *See id.* ¶ 60.

[10]     *See id.* ¶¶ 204, 224, 238, 246, 254.

[11]     *See id.* ¶ 52.

[12]     *Id.* ¶ 53.  Van Roon has failed to enter an appearance.

[13]     *See id.* ¶ 54.

February 2011.[14]  Tore Nag was listed in the SCP proxy statement as Gerova's President and COO, however in the Gerova proxy statement, he was listed as COO and Hirst was listed as Gerova President.[15]  Nag resigned as COO "on or before April 8, 2010."[16]  Jack Doueck is a principal of SCP, DE and a shareholder of SCP, NY; he was also a Gerova director.[17]  Richard Rudy is a principal of SCP, DE and a shareholder of SCP, NY.[18]  Plaintiffs allege the following claims against these individual defendants: (I) violation of Section 14(a) of the Exchange Act; (II) violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (III) violation of Section 20(a) of the Exchange Act.[19]  Plaintiffs also allege the breach of fiduciary duty claims (IV-VI) against Doueck and Rudy by virtue of their positions within SCP, DE;[20] and aiding and abetting breaches of fiduciary duty (VII) against Hirst, van Roon, Hlavsa, Laslop, and Nag.

### C.    Stillwater Funds Management and the Gerova Merger

---

[14]    *See id.* ¶ 55.  Laslop has failed to enter an appearance.

[15]    *See id.* ¶ 56.

[16]    *Id.*

[17]    *See id.* ¶ 61.

[18]    *See id.* ¶ 62.

[19]    *See id.* ¶¶ 206, 218, 231.

[20]    *See id.* ¶¶ 238, 246, 254.

Plaintiffs were investors in the Stillwater Funds, many of whom were unable to redeem their investments due to the Funds' liquidity problems.[21]  At the time of the merger between SCP and Gerova, plaintiffs allege that SCP had between $30 million and $110 million in unpaid redemptions.[22]  In an attempt to solve the illiquidity of their assets and — plaintiffs allege — "seeking $17 million in payments for themselves," SCP sought a merger with Gerova.[23]  On December 23, 2009, SCP investors received what plaintiffs characterize as a proxy solicitation "jointly issued" by Gerova and SCP.[24]  The document is entitled "Consent Solicitation Letter" and appears on SCP letterhead.[25]  While the letter did include a memorandum from Gerova (then called ASSAC),[26] Gerova asserts that the solicitation was not sent by both it and SCP, but rather came only from SCP.[27]

---

[21]     *See id.* ¶ 77.

[22]     *See id.* ¶ 79.

[23]     *Id.* ¶¶ 39-40.

[24]     *Id.* ¶ 80.

[25]     *See* Consent Solicitation Letter, Ex. 1 to 12/21/11 Declaration of Jonathan Horne, counsel to plaintiffs, in Opposition to Defendants' Motions to Dismiss ("Horne Decl.") at 1.

[26]     *See id.* at 19.

[27]     *See* Gerova Financial Group, Ltd.'s Memorandum of Law in Support of Its Motion to Dismiss Amended Class Action Complaint ("Gerova Mem.") at 4.

Plaintiffs claim that the proxy solicitation that Gerova sent to its own shareholders was "materially different" from the proxy issued to SCP investors two weeks earlier.[28]

### D.    Allegedly False and Misleading Statements

Gerova's merger with SCP was part of a group of transactions including Gerova's acquisition of an 81.5% interest in Amalphis and the assets and investments held by Wimbledon.[29]  Although the SCP proxy solicitation mentioned these transactions, plaintiffs allege that "the Wimbledon and Amalphis transactions were related party transactions in which Gerova purchased demonstrably overvalued assets from Gerova insiders"[30] and that the related-party nature of the transactions was not disclosed.

Plaintiffs claim that the Amalphis transaction was a related-party transaction because the party from which Gerova acquired Amalphis was Rineon, "an inactive holding company" that was acquired by the investment fund Intigy

---

[28]    *See* Am. Compl. ¶ 119.  The Gerova proxy disclosed the adjustment of SCP's net asset value and contained adjusted net asset values for SCP and Wimbledon.  *See id.*

[29]    *See id.* ¶ 82.  Gerova also sought to acquire Northstar, but that acquisition did not close.  *See id.*  These transactions are referred to throughout as the "January 2010 transactions."

[30]    *Id.* ¶ 83.

Absolute Return ("Intigy").[31]  Intigy was managed by Axiat, Inc. of which Hirst is president and chief executive officer ("CEO").[32]  Plaintiffs allege that Hirst "installed Tore Nag as Rineon's President and Chief Operating Officer, and Michael Hlavsa as Rineon's Chief Financial Officer and Secretary."[33]  Plaintiffs also allege that Hirst made a profit of $21 million in selling Amalphis to Gerova just seven months after he, through Intigy, had purchased it.[34]  None of these relationships were disclosed in the proxy sent to SCP investors, and plaintiffs allege that "Rineon was acquired solely to launder Amlaphis onto Gerova's balance sheet and to conceal that Gerova was overpaying Gerova insiders by more than $21 million . . . for Amalphis."[35]

Plaintiffs also claim that the Wimbledon transaction was a related-party transaction because Gerova acquired it from Weston Capital Asset Management, LLC ("Weston"), which was owned by Fund.com.[36]  Van Roon, a founding member of Gerova's board and current member during the January 2010

---

[31]  *Id.* ¶ 93.

[32]  *See id.*

[33]  *Id.* ¶ 95.

[34]  *See id.* ¶ 96.

[35]  *Id.* ¶ 99.

[36]  *See id.* ¶ 102.

transactions, "held 59.34% of Fund.com's voting shares through his ownership of Equities Media Acquisition Corp."[37]  Furthermore, Hlavsa, Gerova's CFO, was a director and CFO of Fund.com from January 15, 2008.[38]  Plaintiffs also claim that Joseph Bianco was both CEO of Gerova and Chairman of Fund.com's board of directors.[39]  As part of the Wimbledon transaction, Gerova agreed to pay Weston a fee to manage the Wimbledon funds, but the amount of that fee was not disclosed.[40]  Since the January 2010 transactions, Rineon has ceased all operations and terminated its obligation to report.[41]  Between June and December 2010, Fund.com lost 98% of its market capitalization and announced that its financial statements for fiscal years 2007-2009 should not be relied upon.[42]  Plaintiffs also allege that Gerova spent approximately $23.5 million in "advisory fees . . . paid to insiders at Gerova."[43]

---

[37]  *Id.* ¶ 103.

[38]  *See id.* ¶ 104.

[39]  *See id.* ¶¶ 102, 105.  The Amended Complaint twice refers to Bianco as a "defendant," but he does not appear to have been named or served in this case. *See id.* ¶¶ 102, 105.

[40]  *See id.* ¶ 106.

[41]  *See id.* ¶¶ 97-98.

[42]  *See id.* ¶ 107.

[43]  *Id.* ¶ 108.

Finally, plaintiffs allege that the proxy statement failed to disclose three conflicts of interest:  (1) that SCP, DE was owed $17 million in management fees; (2) that Gerova agreed to pay this obligation; and (3) that SCP, NY's management contracts were "substantially better" than their pre-merger contracts, because the net asset value from which SCP's performance fees would be measured was reset.[44]

### E.    Gerova's Collapse

Following the January 2010 transactions, Gerova's "public float"[45] consisted of 300,000 IPO shares and Gerova received a de-listing notice from the NYSE Amex Exchange for failure to comply with the minimum shareholder requirement.[46]  After the January 2010 transactions, the majority of original Gerova investors voted to redeem their shares for cash rather than obtain shares in the new company.[47]  Around the same time, Gerova's public float "dramatically increased," but no registration statement was filed.[48]  On May 26, 2010, Gerova transferred its

---

[44]    *See id.* ¶¶ 113-114.

[45]    "The securities held by persons other than affiliates of the issuer."  1A Going Public Corp. § 5:80 (quotation marks omitted).

[46]    *See* Am. Compl. ¶ 136.

[47]    *See* Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Pl. Opp.") at 8.

[48]    *Id.*

real estate assets to Net-Five in exchange for a 49% interest in the joint venture with a non-party;[49] plaintiffs claim that this transaction "alienated from Gerova all of its real estate assets" and that Gerova has not provided shareholders with any document regarding the transaction other than the joint venture agreement itself.[50]

Even though Gerova's ordinary share trading volume was low in the beginning of 2010, on June 25, 2010 share volume spiked to almost 1.4 million shares for the day, far in excess of the 300,000 shares outstanding in mid-February.[51]  Gerova's SEC filings confirmed that approximately 11.5 million additional shares had entered the market since January 2010.[52]  Because the ordinary shares created through the conversion were unregistered, and Gerova made no additional public offering, plaintiffs assert that this share volume can only be explained as "Gerova's insiders . . . dumping shares of stock into an inflated market, without disclosing such sales to investors."[53]

After the publication of the "Dalrymple Report" by a short-seller firm on January 10, 2011, which "detailed an array of related party transactions, . . .

---

[49]     *See* Am. Compl. ¶ 150.

[50]     *Id.* ¶ 151.

[51]     *See id.* ¶ 140.

[52]     *See id.* ¶ 141.

[53]     *Id.* ¶ 143.

insiders' relationships . . ., and questioned the valuation of Gerova's assets,"[54] the price of Gerova shares fell from a high of \$30.09/share to a low of \$5.28/share on February 23, 2011.[55]  On February 24, 2011, the New York Stock Exchange ceased trading of Gerova stock, and Gerova securities were de-listed on April 18, 2011.[56] Gerova terminated its stock registration on June 15, 2011.[57]  As of November 1, 2011, Gerova's share price was \$0.06 and they were traded on "pink sheets."[58]

Between January 2010 and February 15, 2011, Gerova experienced high management turnover, including three different CEOs during that time.[59]  SCP and Gerova are in negotiations to unwind the SCP/Gerova merger;[60] however, plaintiffs assert that this will not allow SCP to recoup all the assets that it originally contributed to Gerova.[61]

## III.   LEGAL STANDARDS

---

[54]    *Id.* ¶ 154.

[55]    *See id.* ¶¶ 154, 161.

[56]    *See id.* ¶¶ 162, 164.

[57]    *See id.* ¶ 164.

[58]    *Id.* ¶ 165.

[59]    *See id.* ¶¶ 124-125, 127, 128.

[60]    *See id.* ¶ 168.

[61]    *See id.* ¶ 169.

**A.      Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."[62]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" advocated by the Supreme Court in *Ashcroft v. Iqbal.*[63]  *First*, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[64]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[65]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[66]  To

---

[62]      *Wilson v. Merrill Lynch & Co.*, — F.3d —, 2011 WL 5515958, at *6 (2d Cir. Nov. 14, 2011) (quotation marks omitted).

[63]      556 U.S. —, 129 S.Ct. 1937, 1950 (2009).

[64]      *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[65]      *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[66]      *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[67]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[68]  Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[69]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[70]  However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[71]  The court may also consider "legally required public

---

[67]    *Twombly*, 550 U.S. at 564.

[68]    *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[69]    *Id.* (quotation marks omitted).

[70]    *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[71]    *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

14

disclosure documents filed with the SEC."[72]

## B.    Choice of Law

Under New York choice-of-law rules, courts first determine whether there is a substantive conflict between the laws of the relevant choices.[73] "In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it."[74]

### 1.    Internal Affairs Doctrine

New York follows the internal affairs doctrine, which generally requires that "questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation."[75]  This doctrine

---

[72]    *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[73]    *See GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) ("The New York Court of Appeals has held that 'the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'") (quoting *In re Allstate Ins. Co. (Stolarz–New Jersey Mfrs. Ins. Co.)*, 81 N.Y.2d 219, 223 (1993)).

[74]    *International Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

[75]    *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) (citations omitted).  *Accord City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat.*, *PLC*, 423 F. Supp. 2d 348, 363 (S.D.N.Y.

15

"recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands."[76]

## IV.   APPLICABLE LAW

### A.   Service of Process

Federal Rule of Civil Procedure 4 sets forth the rules applicable to service of process.  Rule 4(e) provides that, absent a waiver, an individual defendant must be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by

---

2006).

[76]   *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).  *Accord* Restatement (Second) of Conflict of Laws § 302 cmt. e ("Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law.").

appointment or by law to receive service of process.[77]

"Where a defendant contests personal jurisdiction based on improper service of process, the plaintiff bears the burden of proving adequate service."[78]  "[D]efective service [cannot] be ignored on the mere assertion that a defendant had actual notice."[79]  However, the Second Circuit has given district courts "discretion to grant extensions [to the 120-day period] even in the absence of good cause."[80]

## B.    Scope of Section 14(a)

Section 14(a) of the Exchange Act makes it "unlawful for any person, by use of the mails . . . or otherwise . . . to solicit or permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title."[81]  "Section 14(a) is satisfied '[o]nly when the proxy statement fully and fairly furnishes all the objective material facts' to allow a reasonably prudent investor 'to make an

---

[77]    Fed. R. Civ. P. 4(e).

[78]    *DeMott v. Bacilious*, No. 11 Civ. 6966, 2012 WL 601074, at *3 (S.D.N.Y. Feb. 24, 2012).

[79]    *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. DE C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (quotation marks omitted).

[80]    *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007).

[81]    15 U.S.C. § 78n(a).

informed investment decision . . . .'"[82]

However, not all issuers are subject to Section 14(a).  For instance, 14(a) does not apply to foreign private issuers[83] or to securities not registered pursuant to Section 12.[84]  17 C.F.R. § 240.3b-4(c) defines a foreign private issuer as:

> any foreign issuer other than a foreign government except an issuer meeting the following conditions:
> (1) More than 50 percent of the issuer's outstanding voting securities are directly or indirectly held of record by residents of the United States; and
> (2) Any of the following:
>> (i) The majority of the executive officers or directors are United States citizens or residents;
>> (ii) More than 50 percent of the assets of the issuer are located in the United States; or
>> (iii) The business of the issuer is administered principally in the United States.

---

[82]    *In re Bank of Am. Corp. Secs., Derivative, & "ERISA" Litig.*, 757 F. Supp. 2d 260, 290 (S.D.N.Y. 2010) (quoting *Mendell v. Greenberg*, 927 F.2d 667, 674 (2d Cir. 1990)).

[83]    *See* 17 C.F.R. § 240.3a12-3b ("Securities registered by a foreign private issuer, as defined in Rule 3b–4 . . ., shall be exempt from sections 14(a), 14(b), 14(c), 14(f) and 16 of the Act.").  *See also Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 291 (2d Cir. 2006) ("The rule exempting foreign private issuers from § 14(a) is nearly as old as § 14(a) itself.").

[84]    *See Republic Tech. Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 545 (2d Cir. 1973) (no liability for proxy-rule violations where the "proxies were not solicited in respect of any security . . . registered pursuant to Section 12 of the Act") (quotation marks omitted).

### C.    Section 10(b) and Rule 10b-5 of the Securities Exchange Act

Section 10(b) of the Securities Exchange Act of 1934 makes it illegal to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ."[85]  Under Rule 10b-5 one may not "make any untrue statement of a material fact or [] omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."[86]  "To sustain a private claim for securities fraud under Section 10(b), 'a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"[87]

### 1.    Misstatements or Omissions of Material Fact

In order to satisfactorily allege misstatements or omissions of material

---

[85]    15 U.S.C. § 78j(b).

[86]    17 C.F.R. § 240.10b-5.

[87]    *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 337 (2d Cir. 2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).  *Accord Erica P. John Fund, Inc. v. Halliburton Co.*, — U.S. — , 131 S.Ct. 2179, 2184 (2011).

fact, a complaint must "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made."[88]  "For the purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."[89]  "[A]ttribution . . . implicit from surrounding circumstances is strong evidence" of who made the statement.[90]

"'[A] fact is to be considered material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares [of stock].'"[91]  In situations "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."[92]  Mere, "allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did[,] do not suffice to make out a claim of securities

---

[88]     *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (quotation marks omitted).

[89]     *Janus Capital Grp., Inc. v. First Derivative Traders*, — U.S. —, 131 S.Ct. 2296, 2302 (2011).

[90]     *Id.*

[91]     *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92-93 (2d Cir. 2010) (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 518 (2d Cir. 1994)).

[92]     *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (citation omitted).

fraud."[93]

## 2.    Scienter

A plaintiff may plead scienter by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."[94] "Sufficient motive allegations 'entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'"[95] "Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud."[96]

"'Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though

---

[93]     *Id.* (citation omitted).  *Accord Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).

[94]     *ATSI*, 493 F.3d at 99 (citing *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000)).  *Accord Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2011 WL 5170293, at *11 (S.D.N.Y. Oct. 31, 2011) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

[95]     *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (quoting *Novak*, 216 F.3d at 307).

[96]     *Id.  Accord ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

the strength of the circumstantial allegations must be correspondingly greater.'"[97]

Under this theory of scienter, a plaintiff must show that the defendant's conduct is

"at the least . . .  highly unreasonable and [] represents an extreme departure from

the standards of ordinary care to the extent that the danger was either known to the

defendant or so obvious that the defendant must have been aware of it."[98]  "To state

a claim based on recklessness, plaintiffs may either specifically allege defendants'

knowledge of facts or access to information contradicting defendants' public

statements, or allege that defendants failed to check information they had a duty to

monitor."[99]

### 3.    Causation

"A securities fraud plaintiff is required to 'prove both transaction

causation (also known as reliance) and loss causation.'"[100]  Loss causation is "the

---

[97]    *Kalnit*, 264 F.3d at 142 (quoting *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987)).  *Accord South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009); *In re Novagold Res. Inc. Secs. Litig.*, 629 F. Supp. 2d 272, 297 (S.D.N.Y. 2009) (quoting *ECA*, 553 F.3d at 198-99).

[98]    *South Cherry St.*, 573 F.3d at 109 (quotation marks and emphasis omitted).  *Accord ECA*, 553 F.3d at 203.

[99]    *In re Gildan Activewear, Inc. Secs. Litig.*, 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009) (quotation marks and citation omitted).

[100]    *Wilamowsky v. Take-Two Interactive Software, Inc.*, — F. Supp. 2d —, 2011 WL 4542754, at *5 (S.D.N.Y. Sept. 30, 2011) (quoting *ATSI*, 493 F.3d at

proximate causal link between the alleged misconduct and the plaintiff's economic harm."[101]  "A misrepresentation is 'the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations . . . .'"[102]  Therefore, "to plead loss causation, the complaint[] must allege facts that support an inference that [defendant's] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud."[103]

### D.   Control Person Liability Under Section 20(a) of the Exchange Act

"To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some

---

106).

[101]   *ATSI*, 493 F.3d at 106-07 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005)).  *Accord Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).

[102]   *In re Omnicom Grp., Inc. Secs. Litig.*, 597 F.3d 501, 513 (2d Cir. 2010) (quoting *Lentell*, 396 F.3d at 173) (emphasis in original).

[103]   *Lentell*, 396 F.3d at 175.

23

meaningful sense, a culpable participant in the controlled person's fraud."[104]

"Allegations of control are not averments of fraud and therefore need not be

pleaded with particularity."[105]  "Thus, '[a]t the pleading stage, the extent to which

the control must be alleged will be governed by Rule 8's pleading standard . . .

.'"[106]  "While a party cannot be held liable for both a primary violation and as a

control person, alternative theories of liability are permissible at the pleading

stage."[107]

### E.    Breach of Fiduciary Duty Claims

Under New York law, "[t]he elements of a claim for breach of a

fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach

of that duty; and (iii) damages resulting therefrom."[108]  "Under Delaware law, the

---

[104]    *ATSI*, 493 F.3d at 108 (citing *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).

[105]    *In re Parmalat Secs. Litig.*, 414 F. Supp. 2d 428, 440 (S.D.N.Y. 2006).

[106]    *In re Scottish Re Grp. Secs. Litig.*, 524 F. Supp. 2d 370, 386 (S.D.N.Y. 2007) (quoting *In re Converium Holding AG Secs. Litig.*, No. 04 Civ. 7897, 2006 WL 3804619, at *14 (S.D.N.Y. Dec. 28, 2006)).

[107]    *In re American Int'l Grp.*, 741 F. Supp. 2d at 534-35 (citing *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 241 (S.D.N.Y. 2009)).

[108]    *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2009)).

elements of a claim for breach of fiduciary duty include (i) the existence of a

fiduciary duty and (ii) a breach of that duty."[109]

### F.    Aiding and Abetting Breach of Fiduciary Duty

"A claim for aiding and abetting a breach of fiduciary duty [under

New York law] requires:  (1) a breach by a fiduciary of obligations to another, (2)

that the defendant knowingly induced or participated in the breach, and (3) that

plaintiff suffered damage as a result of the breach."[110]

### 1.    SLUSA Preclusion[111]

"SLUSA was enacted in 1998 to prevent class action plaintiffs from

circumventing the heightened pleading requirements under the [Private Securities

Litigation Reform Act] through artful pleading."[112]  SLUSA states:

---

[109]    *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607
(S.D.N.Y. 2011) (citing *Heller v. Kiernan*, No. Civ. A. 1484–K, 2002 WL 385545,
at *3 (Del.Ch. Feb. 27, 2002), *aff'd*, 806 A.2d 164 (Del. 2002)).

[110]    *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003).  *Accord
In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005).

[111]    "SLUSA is a statute of preclusion, rather than preemption," because it
does not "displace state law with federal law.  Rather, SLUSA renders
nonactionable[,] state claims brought by plaintiffs as part of a covered class action
because such claims cannot be litigated in state court *or* federal court."  *Romano v.
Kazacos*, 609 F.3d 512, 519, n.2 (2d Cir. 2010) (emphasis in original) (citing
*Kircher v. Putnam Funds Trust*, 547 U.S. 633, 637, n.1 (2006)).

[112]    *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 429 (S.D.N.Y. 2010)
(citing *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 97-98 (2d Cir. 2007)).

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.[113]

A complaint triggers SLUSA when it alleges "'(1) an explicit claim of fraud or misrepresentation (e.g., common law fraud, negligent misrepresentations, or fraudulent inducement), or (2) other garden-variety state law claims that sound in fraud.'"[114]

To qualify as a covered class action, the suit must be one in which "damages are sought on behalf of more than fifty persons or prospective class members."[115]  Additionally, plaintiffs must allege a misrepresentation or omission of a material fact in connection with a covered security.[116]  A "'covered security is one traded nationally and listed on a regulated national exchange or issued by an investment company that is registered, or files registration statements, under the

---

[113]    15 U.S.C. § 78bb(f)(1)(A).

[114]    *In re Merkin*, — F. Supp. 2d —, Nos. 08 Civ. 10922, 09 Civ. 6031, 09 Civ. 6483, 2011 WL 4435873 at *10 (S.D.N.Y. Sept. 23, 2011) (quoting *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 261 (S.D.N.Y. 2004)).

[115]    15 U.S.C. § 78bb(7)(5)(B).

[116]    *See id.* § 78bb(f)(1)(A).

Investment Company Act of 1940.'"[117]

However, an action is not precluded by SLUSA "if a communication or recommendation is made by the issuer to shareholders with respect to the sale of securities and concerns decisions regarding voting securities, exercising appraisal rights or acting in response to an exchange."[118]  SLUSA provides:

> (3) Preservation of certain actions.
> (A) Actions under State law of State of incorporation.
> (i) Actions preserved . . . a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated . . . or organized . . . may be maintained in a State or Federal court by a private party.
> (ii) Permissible actions. A covered class action is described in this clause if it involves . . .
> (II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that-
> (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
> (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.[119]

## V.   DISCUSSION

### A.   Service of Process

---

[117]   *Romano*, 609 F.3d at 520 n.3 (quoting 15 U.S.C. § 77r(b)).

[118]   *Fisher v. Kanas*, 487 F. Supp. 2d 270, 280 (E.D.N.Y. 2007).

[119]   15 U.S.C. § 78bb.  This provision is known as the "Delaware carve-out."

Hirst claims that "[p]laintiffs . . . waited approximately 181 days before they began to attempt to serve [him] with the complaint."[120]  However, the "Affidavit of Non Service" attached as an exhibit to the declaration of Hirst's counsel, shows that service of process was first attempted on March 31, 2011, just nine days after the complaint was filed, and that service was attempted no fewer than twenty times between March 2011 and October 2011.[121]  Furthermore, the process server received confirmation from a neighbor that one of the addresses that was visited and to which process was mailed[122] was Hirst's house in Florida and that the other address where process was sent was his mother's home on the same street.[123]  Additionally, a process server saw a Federal Express box addressed to Hirst outside of one of the residences.  In light of this, the purpose of Fed. R. Civ. P. 4(e) has been served:  "to [e]nsure that service is reasonably calculated to provide a defendant with actual notice of the action."[124]

---

[120]    Memorandum of Law in Support of Defendant Gary T. Hirst's Motion to Dismiss the Amended Complaint ("Hirst Mem.") at 21.

[121]    *See* Affidavits of Due Diligence, Service, and Non Service, Ex. I to 12/7/11 Declaration of Joshua S. Sohn, counsel to Gary T. Hirst, in Support of Hirst's Motion to Dismiss ("Sohn Decl.").

[122]    *See id.* (253 Saddleworth Place, Lake Mary, FL).

[123]    *See id.* (257 Saddleworth Place, Lake Mary, FL).

[124]    *Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y. 1994). *Cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Hirst contends that he has not resided in Florida since May 2011.  The Second Circuit has recognized that "[i]n a highly mobile and affluent society, it is unrealistic to interpret Rule 4(d)(1) so that the person to be served has only one dwelling house or usual place of abode at which process may be left."[125] Additionally, service of the Amended Complaint was effectuated by e-mailing a copy to Hirst's attorney of record in this action, Mr. Sohn.[126]  Hirst has clearly been apprised of this action as indicated by his filing a motion to dismiss.  A dismissal without prejudice[127] would do little more than stall these proceedings.

Nag and Hlavsa also argue deficiency of service of process.  The docket shows that summonses were issued to both Nag and Hlavsa on March 22, 2011, but were never returned.  On October 19, 2011, a summons and complaint were delivered to a person of suitable age and discretion at Nag's residence.[128]  On

---

[125]    *National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991) (quotation marks omitted).

[126]    *See* Certificate of Service, Ex. J to Sohn Decl. at 1.

[127]    *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Because service of the Amended Complaint has already been made on both Hirst and Nag, no further action is required regarding service of process for either defendant.

[128]    *See* Affidavit of Service, Ex. E to 12/7/11 Declaration of Dan C. Kozusko, counsel to Tore Nag, in Support of Nag's Motion to Dismiss ("Kozusko

November 2, 2011 both Nag and Hlavsa were served with the Amended Complaint.[129]  Though service was not effectuated until approximately 210 days after the initial complaint was filed, Nag and Hlavsa have not been prejudiced by the delay.  The service was "reasonably calculated to provide [them] with actual notice of the action,"[130] and they are in receipt of the Amended Complaint. Dismissal of the action will only cause unnecessary delay.

### B.  Section 14(a)

Whether Gerova is a foreign private issuer impacts plaintiffs' 14(a) claim because foreign private issuers are not subject to 14(a) liability.[131]  The parties agree that Gerova is a "foreign issuer other than a foreign government," and that SEC Rule 3b–4 therefore applies; Gerova is incorporated, and maintains its principal place of business, in Bermuda.[132]  Plaintiffs contend that Gerova's failure to address both subsections of conditions in 17 C.F.R. § 240.3b-4 precluded it from

---

Decl.").

[129]    *See* Certificate of Service, Ex. F to Kozusko Decl.

[130]    *Jaffe & Asher*, 158 F.R.D. at 280.

[131]    *See* 17 C.F.R. § 240.3a12-3b ("Securities registered by a foreign private issuer, as defined in Rule 3b–4 . . ., shall be exempt from sections 14(a), 14(b), 14(c), 14(f) and 16 of the Act.").

[132]    *See* Am. Compl. ¶ 51.

foreign private issuer status.[133]  Gerova responds by stating that it did not need to address Section 240.3b-4(c)(1) because it did not meet any of the qualifications under the second prong.  Gerova is correct that subsections (1) and (2) contain different conditions, and to be denied foreign private issuer status, an otherwise qualified entity must meet at least one condition in each group.

In addition to the fact that the SEC was sufficiently satisfied with Gerova's response that it completed its review of Gerova and did "not have any further comments,"[134] Gerova's explanation fits with the general analysis under Section 240.3b-4.  Subsection (1) is not phrased as a threshold condition and the word "and" links it with subsection (2).  Simply because Gerova chose to streamline its analysis by first showing that it did not meet any of the conditions in subsection (2), does not revoke its status as a foreign private issuer.  Plaintiffs cannot offer a strained reading of the regulation and then declare that whether Gerova is a foreign private issuer raises a fact dispute to be resolved at a trial.[135]  As a matter of law, Gerova is not subject to Section 14(a) liability.

Plaintiffs' 14(a) claim as pleaded against SCP fares no better.  As SCP

---

[133]    *See id.* ¶ 70.

[134]    11/18/10 Letter from SEC to Michael Hlavsa, CFO, Gerova Financial Group, Ltd.

[135]    *See* Pl. Opp. at 46.

states, "[p]laintiffs do not allege — because they cannot — that their interests in the Stillwater Funds were subject to Section 12 of the Exchange Act."[136]  Instead, plaintiffs argue that Section 14(a) applies to the proxy statement by pointing to the Gerova shares that plaintiffs were to obtain as part of the January 2010 transaction. Plaintiffs admit that the case law supporting their theory is "sparse."[137]

Plaintiffs cite *Wilson v. Great American Industries, Inc.* for the proposition that even where a proxy is not required, "when defendants choose to issue a proxy plaintiffs have a right to a truthful one."[138]  However, the securities at issue in *Wilson* were registered securities subject to Section 12, making that case distinguishable from the instant action.  Because the proxy statement sent to plaintiffs concerned their shares in the SCP Funds, which were not registered securities subject to Section 12 of the Exchange Act, SCP is not subject to Section 14(a) liability for any misrepresentations or omissions that were contained therein.[139]

---

[136]    SCP Mem. at 17.

[137]    Pl. Opp. at 43.

[138]    979 F.2d 924, 931 (2d Cir. 1992).

[139]    *See Republic Tech. Fund*, 483 F.2d at 545 ("claimed violation of the proxy rules must fail because proxies were not solicited in respect of any security . . . registered pursuant to Section 12") (quotation marks omitted).

### C.    Section 10(b) and Rule 10b-5 of the Securities Exchange Act

### 1.    SCP and SCP Principal Liability

The proxy solicitation at issue was sent by SCP to the plaintiffs in order to obtain their votes to approve the SCP/Gerova merger and was signed by Doueck and Rudy.[140]  Plaintiffs allege that the proxy solicitation failed to disclose the related-party nature of the Amalphis and Wimbledon transactions,[141] which Gerova entered into along with its merger with SCP.  Plaintiffs also claim that SCP failed to disclose that it would be paid $17 million in unpaid management fees[142] — money it would not have received unless it merged with Gerova, due to SCP's liquidity problems — and that SCP, NY's management contracts were "substantially better" under the Gerova deal than existed previously.[143]

SCP claims that these omissions were not material because the $17 million in management fees were due and had a right to be collected absent the Gerova merger.[144]  Regarding the improved management contracts, SCP claims

---

[140]    *See* Consent Solicitation Letter.

[141]    *See* Am. Compl. ¶¶ 92 (Amalphis transaction), 101 (Wimbledon transaction).

[142]    *See id.* ¶ 113.

[143]    *Id.* ¶ 114.

[144]    SCP Mem. at 11-12.  Defendants do not argue that the statements fail to meet the "in connection with" requirement of Section 10(b).  Because the proxy

that "the manner in which Gerova intended to compensate Stillwater . . . [was] not material" because "[p]laintiffs' ability to monetize their investments would be based on more than" how SCP was compensated.[145]  Plaintiffs claim that they were unaware of the outstanding fees in part because they did not have access to SCP's financial statements.[146]  Both the $17 million in unpaid fees and new management contracts are material because a reasonable person would consider them important in deciding whether to approve the SCP/Gerova merger.  As such, plaintiffs have adequately pled material misstatements and omissions on the part of SCP and SCP principals Doueck and Rudy.

　　　　　SCP contends that the plaintiffs do not ascribe any motive to SCP for withholding information with the intent of inducing the plaintiffs to vote in favor

---

statement sought plaintiffs' approval of a merger through which they would receive Gerova securities, and interests acquired through mergers are considered securities, the "in connection with the purchase or sale of any security" requirement has been met.  *See, e.g.*, *SEC v. National Secs. Inc.*, 393 U.S. 453, 467 (1969) (holding shareholders "purchase" shares in the new entity by exchanging them for their old stock when merger occurs), *abrogated on other grounds by United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 507 (1993); *Madden v. Cowen & Co.*, 576 F.3d 957, 966 (9th Cir. 2009) (construing the phrase "purchase or sale" of securities to include a stock-for-stock merger).

[145]　　　SCP Mem. at 12.

[146]　　　*See* Pl. Opp. at 37.

of the merger.[147]   However, plaintiffs put forth two different theories that support a finding of scienter.  *First*, plaintiffs' allegations that SCP would be paid $17 million by Gerova that it would not otherwise receive, and that it would benefit from improved management contracts are "concrete benefits that could be realized by one or more of the . . . wrongful nondisclosures alleged."[148]  *Second*, plaintiffs claim that SCP failed to perform due diligence on Gerova[149] and therefore "'failed to review or check information that they had a duty to monitor . . . .'"[150]  Plaintiffs' allegations, as set forth above, are adequate to plead scienter on the part of SCP and SCP principals Doueck and Rudy.

Because SCP does not argue a lack of reliance, the only element left for plaintiffs to establish is loss causation.  Plaintiffs assert that loss causation is shown by the fact that once the Dalyrymple Report was released — which contained allegations of the same relatedness and management fees that plaintiffs

---

[147]   *See* SCP Mem. at 14.

[148]   *Kalnit*, 264 F.3d at 139 (quotation marks omitted).

[149]   *See* Am. Compl. ¶ 30 ("Doueck admitted to certain other plaintiffs that he had not performed due diligence on Gerova or its principals prior to the Share Exchange.").

[150]   *S.E.C. v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 350 (S.D.N.Y. 2011) (quoting *South Cherry St.*, 573 F.3d at 109).

complain of as having been omitted from the proxy statement[151] — Gerova stock

fell "approximately 99.8%" and SCP's assets "lost between 70% and 90% of their

value."[152]  The Second Circuit has held that plaintiffs can show loss causation by

showing "'that the defendants' misrepresentations induced a disparity between the

transaction price and the true investment quality of the securities at the time of the

transaction.'"[153]

### 2.   Gerova and Gerova Officers' Liability

Gerova contends that it cannot be held liable under Section 10(b)

because any misstatements or omissions of related parties in the proxy statement

were not made by Gerova.[154]  While plaintiffs claim that the proxy statement was

"jointly issued" by Gerova and SCP,[155] a review of the document does not support

this characterization.  The proxy statement is on SCP letterhead and is signed by

principals of SCP.[156]  Under *Janus*, SCP was the maker of the proxy solicitation

---

[151]   *See* Am. Compl. ¶ 154.

[152]   Pl. Opp. at 38.

[153]   *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 187 (2d Cir. 2001) (quoting *Suez Equity Investors v. Toronto-Dominion Bank*, 250 F.3d 87, 97-98 (2d Cir. 2001)).

[154]   *See* Gerova Mem. at 11.

[155]   Am. Compl. ¶ 80.

[156]   *See* Consent Solicitation Letter, at 1, 17.

statements.[157]   However, attached to the proxy is a memorandum sent from

Gerova's predecessor in interest (ASSAC), which details the Amalphis and

Wimbledon transactions without disclosing their allegedly related-party nature.

The statements in this attached memorandum were made by Gerova for the

purposes of Rule 10b-5.[158]

Gerova officers Hirst, Hlavsa, and Nag argue that they are not liable

under 10(b) because none of the alleged misstatements or omissions were

attributed to them.[159]   Plaintiffs allege that Gerova was a special purpose

acquisition company, with "no operations and only a few employees" and that its

sole business purpose was the acquisition of other companies.[160]   Construing the

allegations in the light most favorable to the plaintiffs and resolving all doubt in

plaintiffs' favor, these are "adequate surrounding circumstances" from which a

reasonable fact finder could conclude that the statements in the Gerova

---

[157]   *See Janus*, 131 S.Ct. at 2302 ("For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

[158]   *See id.* ("attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by . . . the party to whom it is attributed").

[159]   *See* Hirst Mem. at 13; Nag Mem. at 5-6.

[160]   Pl. Opp. at 25.

memorandum were implicitly attributed to officers Hirst, Hlavsa, and Nag.[161]  This situation differs from *Janus*, which involved two separate entities and whether statements of one could be attributed to the other.[162]  Unlike here, the *Janus* plaintiffs did not allege a small number of employees or a single business purpose. The circumstances surrounding Gerova and the issuance of the memorandum are strong evidence that Hirst, Hlavsa, and Nag made the statements in the memorandum.

Gerova contends that plaintiffs failed to plead scienter sufficiently. Plaintiffs, in turn, point to Gerova's strong desire to effectuate the SCP/Gerova merger in order to receive the nearly $650 million SCP assets.  The Amended Complaint pleads the following facts as the basis for plaintiffs' allegations of scienter:  (1) the various omissions in the memorandum Gerova made with reckless, if not knowing, disregard for the truth; (2) the resignations and deferred appointments of seven officers and directors and the replacement of its entire board of directors except Hirst;[163] (3) the alleged personal profits by Gerova insiders from

---

[161]    *S.E.C. v. Landberg*, No. 11 Civ. 0404, 2011 WL 5116512, at *4 (S.D.N.Y. Oct. 26, 2011) (quotation marks omitted) (finding circumstances supporting attribution of fraudulent financial statements and marketing materials to the defendant in his role as CFO).

[162]    *See Janus*, 131 S.Ct. at 2300.

[163]    *See* Am. Compl. ¶¶ 124-130.

the related-party transactions;[164] and (4) Gerova's transfer of all real estate assets to Net Five in exchange for a 49% interest in the joint venture.[165]  Plaintiffs' allegations, taken as true, sufficiently plead that the conduct of the Gerova's officers was "highly unreasonable" and "an extreme departure from the standards of ordinary care . . . ."[166]

Gerova only contests reliance with respect to the holders of the Cayman Island funds.[167]  Because those SCP investors did not have the right to vote regarding the merger, Gerova argues that they could not have relied on any misrepresentations or omissions in the memorandum attached to the proxy statement.  However, this argument fails to consider that the Cayman Island investors may have chosen to redeem their shares rather than receive the Gerova securities; this is sufficient to establish reliance at the pleading stage.

For the same reason that loss causation was satisfied concerning SCP, it is also satisfied with regard to Gerova — once the Dalyrymple Report was released, which contained allegations of the same relatedness and management fees

---

[164]   *See id.* ¶ 99.

[165]   *See id.* ¶ 150.

[166]   *Novak*, 216 F.3d at 308 (quotation marks omitted).

[167]   *See* Gerova Mem. at 18.

39

that plaintiffs complain of as having been omitted from the proxy statement,[168]

Gerova stock and SCP asset value both fell precipitously.  For the foregoing

reasons plaintiffs' Section 10(b) claims survive all defendants' motions to dismiss.

### D.    Section 20(a)

Plaintiffs assert control person liability claims under Section 20(a) of

the Exchange Act against the individual defendants:  Doueck, Rudy, Hirst, van

Roon, Hlavsa, Laslop, and Nag.  "While a party cannot be held liable for both a

primary violation and as a control person, alternative theories of liability are

permissible at the pleading stage."[169]  As demonstrated above, a primary 10(b)

violation has been adequately shown at this point regarding both SCP and Gerova,

which satisfies the first prong of Section 20(a).  All defendants merely contend that

the 20(a) claim must be dismissed based on plaintiffs' failure to sufficiently allege

a primary violation.  Because the 10(b) claim survives, the 20(a) claim against all

individual defendants also survives.

### E.    Breach of Fiduciary Duty

Counts IV-VI concern plaintiffs' breach of fiduciary claims against

---

[168]    *See* Am. Compl. ¶ 154.

[169]    *In re American Int'l Grp.*, 741 F. Supp. 2d at 534-35 (citing *Police & Fire Ret. Sys. of City of Detroit*, 645 F. Supp. 2d at 241).

SCP and the SCP principals.[170]  Plaintiffs have adequately pled the existence of a

fiduciary duty, knowing breach of that duty, and damages arising therefrom.

However, under both New York and Delaware law, Count IV is derivative and

therefore plaintiffs lack standing to bring it directly.  Count IV, alleging breach of

SCP's duty of care by recommending that plaintiffs approve the merger with

Gerova and consummating the merger without performing any due diligence is "'a

classic claim of fund mismanagement that belongs to the Fund, and is therefore

derivative.'"[171]  Because plaintiffs lack standing to bring this claim directly, it is

dismissed.

       Count V (breach of duty of loyalty by inducing plaintiffs to exchange

their investments for shares in Gerova) and Count VI (breach of duty of candor by

providing a false and misleading proxy solicitation to plaintiffs) survive SCP's

motions to dismiss.  SCP sets forth two arguments in support of dismissing Counts

V and VI:  (1) that they are preempted by the Martin Act and (2) that they are

duplicative of the 10(b) claims, which should be dismissed.  Neither basis is

---

[170]     *See* Am. Compl. ¶ 87.

[171]     *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 377-78 (S.D.N.Y.
2011) (quoting *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104,
127 (S.D.N.Y. 2010)); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 79
(S.D.N.Y. 2010) (claims "based on [] alleged mismanagement . . . through the
failure to conduct adequate due diligence . . . is a paradigmatic derivative claim")
(quotation marks omitted) (applying Delaware law).

persuasive.  *First*, since the motions were filed, the New York Court of Appeals

decided *Assured Guaranty (UK) Ltd. v. J.P. Morgan Investment Management*,[172]

which held that such state law claims are not preempted by the Martin Act.

*Second*, as discussed above the 10(b) claims survive defendants' motions to

dismiss.

### F.  Aiding and Abetting Breach of Fiduciary Duty

Count VII alleges that Gerova substantially assisted SCP's breaches

of fiduciary duty by negotiating and finalizing the January 2010 transaction even

though it knew that SCP had not performed due diligence.[173]  Gerova is

incorporated in Bermuda with its principal offices in Hamilton, Bermuda.  Under

the internal affairs doctrine,[174] I will apply Bermuda law to the analysis of this

claim.[175]

Although plaintiffs concede that the elements of SLUSA preclusion

are met by this claim, they assert that the claim is preserved by the "Delaware

---

[172]    *See* 18 N.Y.3d 341, 348 (2011) ("common-law causes of action for breach of fiduciary duty and gross negligence . . . are not preempted" by the Martin Act).

[173]    *See* Am. Compl. ¶ 262.

[174]    *See Scottish Air Int'l*, 81 F.3d at 1234.

[175]    In their opposition brief, plaintiffs appear to contend that SCP, rather than Gerova, was the issuer.  However, this contention lacks any factual support.

carve-out" exception.[176]  That exception however, applies only to claims "based upon the law of the State in which the issuer is incorporated."[177]  Because Gerova is not incorporated under the laws of any State, the Delaware carve-out does not apply and Count VII must be dismissed because it is precluded by SLUSA.

## VI.  CONCLUSION

For the foregoing reasons, Counts I, IV, and VII are dismissed and Counts II, III, V, and VI survive defendants' motions to dismiss.  The Clerk of the Court is directed to close these motions [Docket Nos. 103, 106, 109, 112].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 3, 2012

---

[176]      *See* Pl. Opp. at 52-53.

[177]      *See* 15 U.S.C. § 78bb(f)(3)(A)(I).  *See also Lalondriz v. USA Networks, Inc.*, 54 F. Supp. 2d 352, 354 (S.D.N.Y. 1999) (not precluded by SLUSA because claim was for breach of fiduciary duty under the common law of Delaware, the state in which [the issuer was] incorporated).

43

## Appearances

**For Plaintiffs:**

Jonathan Richard Horne, Esq.
Laurence Matthew Rosen, Esq.
Phillip C. Kim, Esq.
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, NY 10016
(212) 686-1060

Gregory Bradley Linkh, Esq.
Murray Frank LLP
275 Madison Avenue, Suite 801
New York, NY 10016
(212) 682-1818

**For Defendants SCP, Doueck, and Rudy:**

Christopher Patrick Greeley, Esq.
Arthur Glenn Jakoby, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
(212) 592-1426

**For Defendant Gerova:**

Alex M. Weingarten, Esq.
Eric Bennett Carlson, Esq.
Ethan J. Brown, Esq.
Weingarten Brown LLP
10866 Wilshire Blvd., Suite 500
Los Angeles, CA 90024
(310) 229-9300

Jeffrey K. Logan, Esq.

Spillane Weingarten LLP
1100 Glendon Avenue, Suite 1200
Los Angeles, CA 90024
(310) 229-9300

**For Defendant Hirst:**

Joshua Samuel Sohn, Esq.
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500

**For Defendant Hlavsa:**

Benjamin Sean Fischer, Esq.
Linda Fang, Esq.
Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.
565 Fifth Avenue
New York, NY 10017
(212) 880-9585

**For Defendant Nag:**

Deirdre Norton, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000